UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| STEPHEN M. GOWAN,<br><br>               Plaintiff,<br><br>   vs.<br><br>MID CENTURY INSURANCE<br>COMPANY, A DIVISION OF FARMERS<br>INSURANCE GROUP;<br><br>             Defendant. | 5:14-CV-05025-LLP<br><br>ORDER ON PLAINTIFF'S<br>MOTIONS TO COMPEL<br><br>[DOCKET NOS. 21, 30, & 43] |

## INTRODUCTION

This matter is pending before the court on plaintiff Stephen M. Gowan's

amended complaint alleging defendant Mid Century Insurance Company

denied his worker's compensation claim in bad faith.  <u>See</u> Docket No. 49.

Jurisdiction is premised on diverse citizenship of the parties and an amount in

controversy in excess of $75,000.  <u>Id.</u>; <u>see also</u> 28 U.S.C. § 1332.  Mr. Gowan

has filed three separate motions to compel discovery, all of which have been

referred to this magistrate judge for decision pursuant to 28 U.S.C.

§ 636(b)(1)(A).  <u>See</u> Docket No. 47.

## DISCUSSION

Because one of the issues raised in the motions to compel is the

relevancy of various items of discovery, some background facts are necessary to

provide context.  These facts are drawn from the parties' briefs and

Mr. Gowan's amended complaint. The court's recitation of the facts thus gleaned does not represent any imprimatur of the court as to their veracity.

Stephen Gowan injured his right knee at work in 2000. His employer had a worker's compensation insurance policy with Mid Century. Mr. Gowan and Mid Century settled Mr. Gowan's worker's compensation claim under terms that did not impact Mr. Gowan's right to future medical treatment for his work related injury. Mid Century continued to provide medical treatment for Mr. Gowan until such time as his treating physician recommended he undergo knee replacement surgery. At this time, Mid Century denied coverage for the knee replacement surgery as well as for injections to Mr. Gowan's right knee that he had previously been receiving to help control his pain.

Mid Century hired Richard Farnham, M.D. to conduct an independent medical exam (IME) on Mr. Gowan. Mid Century had previously hired Dr. Farnham on 11 occasions between 2000 and 2012 to provide it with IMEs on various Mid Century claimants. Mr. Gowan alleges that Mid Century hired Dr. Farnham because he was "notoriously biased in favor of insurance companies." Mr. Gowan alleges it was Mid Century's expectation in hiring Dr. Farnham that he would render an opinion that would support Mid Century denying or limiting medical treatment to Mr. Gowan.

Dr. Farnham issued an opinion that Mr. Gowan did indeed need a total knee replacement of his right knee and that the surgery was related to Mr. Gowan's 2000 work-related injury. However, Dr. Farnham opined the portion of the knee replacement surgery occasioned by the work injury was

only 25%, while 75% was non-work related.  Accordingly, Mid Century agreed

only to shoulder 25% of the cost of the anticipated surgery.  Mr. Gowan's

doctor refused to perform the surgery because Mid Century was not agreeing to

pay for it.  Mid Century discontinued payments for Mr. Gowan's knee

injections.  Dr. Farnham's opinion did not touch on the matter of these

injections.

On February 10, 2009, a file note in Mid Century's file regarding

Mr. Gowan states, "FILE STRATEGY** **GOAL** DENY FURTHER."  Discovery

in this matter uncovered facts showing that the author of this file note was

Janet Estes, the supervisor of Michael Shoback, the claims handler assigned

by Mid Century to handle Mr. Gowan's claim.

Mr. Gowan consulted the attorney who represented him in his 2000

worker's compensation injury, but the attorney declined to represent

Mr. Gowan in the matter related to his knee surgery.  Mr. Gowan was able to

find another attorney to represent him.  This attorney filed a petition for a

hearing with the South Dakota Department of Labor.  Mid Century answered

the petition by denying Mr. Gowan was entitled to knee replacement surgery or

knee injections and asking that Mr. Gowan's petition be dismissed with

prejudice.

At some point while the petition was pending, Mid Century reversed

course and granted Mr. Gowan's request for payment of the knee replacement

surgery.  The surgery was performed in February, 2014.  Mr. Gowan filed the

instant lawsuit before this court two months later.  Now pending are three

separate motions to compel discovery filed by Mr. Gowan.  See Docket Nos. 21,

30 and 43.  Mid Century resists these motions.  See Docket Nos. 26, 34, and

51.

## DISCUSSION

### A.    Meet and Confer Requirement

Rule 37(a)(1) requires the parties to meet and confer to attempt to resolve

discovery disputes prior to filing a motion to compel.  See FED. R. CIV. P.

37(a)(1).  In addition, this court's local rules impose a similar requirement.  See

DSD LR 37.1.  The parties discussed the discovery dispute in this matter

thoroughly and on multiple occasions over the course of several weeks.  See

Docket Nos. 22, 31, & 45.  Mid Century does not dispute that Mr. Gowan has

satisfied the meet and confer requirement.  The court finds this prerequisite

satisfied.

### B.    General Principles Applicable to Discovery in Federal Court

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery

in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is
> as follows:  Parties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim or
> defense–including the existence, description, nature, custody,
> condition, and location of any documents or other tangible things
> and the identity and location of persons who know of any
> discoverable matter.  For good cause, the court may order
> discovery of any matter relevant to the subject matter involved in
> the action.  Relevant information need not be admissible at the
> trial if the discovery appears reasonably calculated to lead to the
> discovery of admissible evidence.  All discovery is subject to the
> limitations imposed by Rule 26(b)(2)(C).

<u>See</u> FED. R. CIV. P. 26(b)(1).  Rule 26 contains specific limitations relative to

electronic discovery and other objections to providing discovery:

> (B) *Specific Limitations on Electronically Stored Information.*  A
> party need not provide discovery of electronically stored
> information from sources that the party identifies as not
> reasonably accessible because of undue burden or cost.  On
> motion to compel discovery or for a protective order, the
> party from whom discovery is sought must show that the
> information is not reasonably accessible because of undue
> burden or cost.  If that showing is made, the court may
> nonetheless order discovery from such sources if the
> requesting party shows good cause, considering the
> limitations of Rule 26(b)(2)(C).  The court may specify the
> conditions for the discovery.
>
> (C) *When Required.*  On motion or on its own, the court must
> limit the frequency or extent of discovery otherwise allowed
> by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or
>> duplicative, or can be obtained from some other source
>> that is more convenient, less burdensome, or less
>> expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to
>> obtain the information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery outweighs
>> its likely benefit, considering the needs of the case, the
>> amount in controversy, the parties' resources, the
>> importance of the issues at stake in the action, and the
>> importance of the discovery in resolving the issues.

<u>See</u> FED. R. CIV. P. 26(b)(2)(B) and (C).  A party claiming a privilege as to

requested discovery has the burden of proving the basis for the application of

the privilege:

> When a party withholds information otherwise discoverable by
> claiming that the information is privileged or subject to protection
> as trial-preparation material, the party must:
>
>> (i) expressly make the claim; and

(ii)    describe the nature of the documents,
        communications, or tangible things not produced or
        disclosed–and do so in a manner that, without
        revealing information itself privileged or protected, will
        enable other parties to assess the claim.

See FED. R. CIV. P. 26(b)(5)(A).  If a party fails to respond to a proper request for

discovery, or if an evasive or incomplete response is made, the party requesting

the discovery is entitled to move for a motion compelling disclosure after having

made a good faith effort to resolve the dispute by conferring first with the other

party.  See FED. R. CIV. P. 37(a).

        The scope of discovery under Rule 26(b) is extremely broad.  See 8

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-

37 (1970) (hereinafter "Wright & Miller").   The reason for the broad scope of

discovery is that "[m]utual knowledge of all the relevant facts gathered by both

parties is essential to proper litigation.  To that end, either party may compel

the other to disgorge whatever facts he has in his possession."  8 Wright &

Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct.

385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between

discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and

33(a)(2).  Therefore, the rules of evidence assume the task of keeping out

incompetent, unreliable, or prejudicial evidence at trial.  These considerations

are not inherent barriers to discovery, however.

        The advisory committee's note to the 2000 amendments to Rule 26(b)(1)

provide guidance on how courts should define the scope of discovery in a

particular case:

Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible. The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. ... In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See FED. R. CIV. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. Id. "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the

World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive.  Penford Corp. v. National Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000).  The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden–that party must make a specific showing of reasons *why* the relevant discovery should not be had.  Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D. Mo. 2010); Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

Several courts have determined that where the discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise appropriate.  See In re Folding Carton Antitrust Litigation, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (stating that "[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate' "); Alexander v. Parsons, 75 F.R.D. 536, 539 (W.D. Mich. 1977) (stating that "the mere fact discovery is burdensome . . . is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence"); and Burns, 164 F.R.D. at 593 (determining that the fact that answering interrogatories will require the objecting party to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents and information is an insufficient basis for an objection).  Moreover, if discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable.  See United States v. Nysco Labs., Inc., 26 F.R.D. 159, 161-62 (E.D.N.Y. 1960)and Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 245 (N.D. W. Va. 1970) (stating that "[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense").

Rule 34 of the Federal Rules of Civil Procedure governs requests for the production of documents and provides that a party may ask another party to

permit copying of documents "in the responding party's possession, custody, or control." See Fed. R. Civ. P. 34(a)(1). The concept of documents in a party's "possession" or "custody" is clear enough, but the concept of documents in a party's "control" is not obvious upon a reading of the rule.

The rule that has developed is that if a party "has the legal right to obtain the document," then the document is within that party's "control" and, thus, subject to production under Rule 34. See 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, §2210, at 397 (2d ed. 1994). "Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control." American Soc. for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 501 (D. Md. 2000); and Poppino v. Jones Store Co., 1 F.R.D. 215, 219 (W.D. Mo. 1940)).

Merely because documents gathered by an attorney are subject to the client's control does not, however, automatically mean they are discoverable. The work product doctrine and the attorney-client privilege still apply and may be asserted in opposition to discovery, along with the appropriate privilege log. Ringling Bros., 233 F.R.D. at 211-213.

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See FED. R. CIV. P. 26(b)(1) advisory

committee's note.  Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit..."  See FED. R. CIV. P. 26(b)(2)(C); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

**C.    Substantive Law Applicable to Mr. Gowan's Claim**

In a case pending in federal court pursuant to diversity jurisdiction, state law applies to issues of substantive law, in this case, that would be South Dakota state law.  Erie R.R. v. Tompkins, 304 U.S. 64 (1938).  To prove a bad faith cause of action, Mr. Gowan must show Mid Century had no reasonable basis for denying his claim for insurance benefits, and Mid Century acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of benefits.  See Sawyer v. Farm Bureau Mut. Ins. Co., 2000 S.D. 144, ¶ 18, 619 N.W.2d 644, 649.  "In a bad faith case, 'the insured must show an absence of a reasonable basis for denial of policy benefits [or failure to comply

with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for the denial.' " <u>Mudlin v. Hills Materials Co.</u>, 2007 S.D. 118, ¶ 6, 742 N.W.2d 49, 51 (brackets in original) (quoting <u>Phen v. Progressive N. Ins. Co.</u>, 2003 S.D. 133, ¶ 24, 672 N.W.2d 52, 59). Bad faith is an issue of fact for the jury. <u>Isaac v. State Farm Mutual Auto. Ins. Co.</u>, 522 N.W.2d 752, 758 (S.D. 1994). The jury should determine whether the insurer acted in bad faith "based on the facts and law available to [the insurer] at the time it made its decision to deny coverage." <u>Id.</u>

In awarding punitive damages, a jury is to evaluate: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. <u>Roth v. Farner-Bocken Co.</u>, 2003 S.D. 80, ¶ 46, 667 N.W.2d 651, 665-66 (citing <u>State Farm v. Campbell</u>, 538 U.S. 408, 418 (2003)). In evaluating these factors, it is relevant whether the harm that was caused to Mr. Gowan resulted from a company policy or practice. <u>Id.</u> at ¶ 65, 667 N.W.2d at 669. In addition, because laws regarding business practices vary from one state to another, the Supreme Court has cautioned that evidence of a company's practices which are relevant to punitive damages should be limited to evidence of practices in the same state as the plaintiff. <u>Campbell</u>, 538 U.S. at 419-24. With the above principles in mind, this court now addresses the discrete discovery issues presented by Mr. Gowan's three motions.

**D.      Discovery Disputes**

**1.      Personnel Files of Mid Century Employees**

Mr. Gowan requested from Mid Century in request for production

number 4 the personnel files for Michael Shoback from May 1, 2005 to the

present; Janet Estes (Mr. Shoback's supervisor) from January 1, 2005 to the

present; and the personnel file of Janet Estes' supervisor (no dates specified).

Subsequently, Mr. Gowan served Mid Century with his fifth request for the

production of documents, seeking the personnel file of the supervisor of

Ms. Estes' supervisor.  Thus, four personnel files are at issue in the several

motions to compel addressed by this opinion:  (1) Michael Shoback's file; (2)

Janet Estes' file; and (3) and (4) the two supervisors up the chain of command

from Ms. Estes.

Mr. Gowan informed Mid Century that social security numbers and

medical information in the requested files could be redacted.   Michael Shoback

was the Mid Century employee who denied Mr. Gowan's claim.  Ms. Estes was

the Mid Century employee who wrote the file note regarding the strategy to

deny further claims in Mr. Gowan's claim.

Following Mr. Gowan's motion to compel Mid Century to respond to the

above request, but prior to Mid Century's response to the motion, the district

court entered a protective order.  <u>See</u> Docket No. 25.  That order allows a party

producing sensitive documents to designate them as "confidential."  The order

contemplates personnel files as among those documents the parties may

appropriately designate as "confidential."  <u>Id.</u>  Once a document is produced in

discovery and is designated as "confidential," several prophylactic measures apply. "Confidential" documents may only be filed with the court under seal. <u>Id.</u> Portions of deposition transcripts may be themselves designated "confidential" if "confidential" documents are discussed therein. <u>Id.</u> Third parties to whom "confidential" documents must be disclosed during the course of litigation must be told of the terms of the protective order and they must agree to the terms of the protective order. <u>Id.</u> Following the conclusion of this litigation, all originals and copies of "confidential" documents must be destroyed or returned to the party that produced the documents. <u>Id.</u>

Mid Century provided Mr. Gowan with copies of Shoback's and Estes' performance reviews from 2009 to 2012. It also produced quality assurance audits of Shobak from 2009 to 2012. But Mid Century did not produce earlier documents, or other categories of documents. Mid Century refused to produce any documents from Estes' supervisor.

Mid Century asserts other documents such as health care election forms, 401(k) forms, and I-9 and W-2 forms are not relevant. Mid Century suggests this court examine Shoback's and Estes' personnel files *in camera* to determine relevancy of remaining documents. Mid Century also argues that other information is privileged and confidential. Mid Century does not identify the privilege it is allegedly asserting nor is there any identification of what documents are being withheld pursuant to any alleged privilege.

### a.   Mid Century's Objections of General Application

The court first addresses Mid Century's "objections of general application."  At the beginning of Mid Century's responses to Mr. Gowan's interrogatories and requests for production of documents, Mid Century states "Objections of General Application" as follows:

> A.    Defendant objects to each and every one of Plaintiffs' [sic] Discovery Demands to the extent that the same purport to seek responses from Defendant's counsel of record, who are not parties to this matter; seek attorney-work product; or seek information which is privileged and therefore not subject to discovery.
>
> B.    Defendant objects to any and all instructions or definitions beyond the requirements imposed by the South Dakota Rules of Civil Procedure.
>
> C.    Defendant objects to each Discovery Demand to the extent it is unreasonably cumulative or duplicative, or the information sought by the interrogatory is obtainable from some other source that is more convenient, less burdensome, or less expensive.
>
> D.    Defendant objects to Plaintiffs' [sic] Discovery Demands to the extent they require Defendant to identify documents or describe information not presently within Defendant's possession, custody, or control.
>
> E.    Defendant does not waive any of the general or particular objections raised by reference in the event documents or information coming within the scope of any such objections are furnished.

See Docket Nos. 23-1and 23-2.

The court overrules these objections entirely as to each and every discovery response that is preceded by this litany of general objections.  The Federal Rules of Civil Procedure require a party objecting to discovery to show specifically how each discovery request is irrelevant or otherwise not subject to discovery.  Kooima v. Zacklift Intern. Inc., 209 F.R.D. 444, 446 (D.S.D. 2002).

See also FED. R. CIV. P. 33(b)(4), 34(b). A party asserting a privilege as to requested discovery must identify the privilege being asserted, then "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." See FED. R. CIV. P. 26(b)(5). Mid Century's boilerplate objections fail to preserve any valid objection at all because they are not specific to a particular discovery request and they fail to identify a specific privilege or to describe the information withheld pursuant to the privilege.

### b. Discoverability of Personnel Files

The court begins with the basic premise that personnel files in bad faith actions have routinely been found to be relevant and discoverable. Lyon v. Bankers Life & Cas. Co., CIV. 09-5070-JLV, 2011 WL 124629 at *8 (D.S.D. Jan. 14, 2011)). "Personnel files may reveal an inappropriate reason or reasons for defendant's action with respect to plaintiff's claim or an 'improper corporate culture.' " Id. Furthermore, in cases where the insurance company tried to limit discovery to the claims handler and his or her immediate supervisor, that attempt has been rejected. See Nye v. Hartford Acc. & Indem. Co., 2013 WL 3107492 at *11-12, Civ. No. 12-5028 (D.S.D. June 18, 2013); Kirschenman v. Auto-Owners Ins., 280 F.R.D. 474, 482-83 (D.S.D. 2012).

Mr. Gowan has asserted that personnel files of insurance company employees may reveal the reasons for denial of a claim, including any improper reasons. Mr. Gowan also asserts this evidence is unlikely to be reflected solely

16

in performance reviews of subject employees. Furthermore, Mr. Gowan has specifically agreed he has no interest in health care forms, 401(k) documents, I-9 forms, or W-2 forms and that Mid Century need not produce these items. For the remaining contents of the personnel files at issue, the district court's protective order assures the confidentiality of these documents. Thus, Mr. Gowan has made his initial showing of the relevance of the discovery he requests. See St. Paul Reinsurance Co., 198 F.R.D. at 511. The burden then shifts to Mid Century to "show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome, or oppressive." Id. at 512.

Mid Century has not done so. It has not demonstrated specific facts showing an undue burden or irrelevance. Its response skirts the issue. Given the fact Mr. Gowan's request requires production of only four personnel files, and given that appropriate protections for the confidentiality of those files are already in place, the court grants plaintiffs' motion to compel in its entirety as to Mr. Gowan's request for production numbers 4 and 5. Mr. Shoback's and Ms. Estes' files shall be produced for the dates indicated by Mr. Gowan in his request. Since no dates were indicated for the file of Ms. Estes' supervisor or for that person's supervisor, the court will order production of those two employees' files for the dates January 1, 2005 to the present. Mid Century is ordered to produce all documents responsive to request for production numbers 4 and 5 within 14 days of the date of this order. These documents are to be protected by the district court's protective order.

## 2. Request for Production 11(d)

Mr. Gowan sought "all documents . . . referring to goals, targets, or objectives established for claim payments, or loss ratios, or combined ratios, that were provided to, or disclosed to, shown to, or given to any of the following from January 1, 2009, to the present: (d) [Janet Estes'] supervisor." Mid Century refused to produce documents pursuant to subpart (d) of request for production number 11. After Mr. Gowan filed the instant motion to compel, Mid Century responded that it "is working to determine whether any such documents exist" for Janet Estes or her supervisor. See Docket No. 26 at p. 5. Because Mid Century appears to have dropped its objection to this request, the court grants Mr. Gowan's motion to compel as to request for production 11(d).

## 3. Janet Estes' Address

Mr. Gowan has requested the address of Janet Estes, the employee who wrote the file note regarding a strategy to deny further claims in Mr. Gowan's case. Mid Century responds that Ms. Estes is no longer employed by Mid Century. Mid Century's objection to providing Ms. Estes' address is that it would be unethical for Mr. Gowan's attorney to contact Ms. Estes, suggesting that Ms. Estes is represented by counsel, but not explicitly stating that Mid Century's attorney or any other attorney is actually representing Ms. Estes.

The assertion that Mr. Gowan's attorney has an ethical problem with contacting Ms. Estes is not necessarily true. Neither can the court assume as true the suggestion that Ms. Estes is represented by an attorney, either Mid Century's attorney or some other.

The fact of the matter is that an address of a witness who is in possession of information relevant to a claim or defense is discoverable information.  See FED. R. CIV. P. 26(a)(1)(A)(i) (parties are required to tell opposing parties in their *initial disclosures* the name, address, and telephone number of all witnesses likely to have discoverable information).  See also Alford v. United States, 282 U.S. 687, 692 (1931).  Furthermore, since Janet Estes obviously has relevant knowledge about Mr. Gowan's claim, Mr. Gowan has a right to depose her.

If a person to be deposed is a party to the action, it is sufficient to serve on that party, as well as all other parties in the litigation, a notice in writing of the date, time and location for the deposition pursuant to Rule 30.  Peitzman v. City of Illmo, 141 F.2d 956, 960 (8th Cir. 1944); 8A Wright & Miller § 2106 at pp. 504-05.  If a party is represented by an attorney, service of the deposition notice is accomplished by serving the notice on the party's attorney.  See FED. R. CIV. P. 5(b)(1).  See also Peitzman, 141 F.2d at 960-61.  If a corporation is a party to an action, an opposing party may name a particular corporate person to depose, but that person must be "an officer, director, or managing agent" of the corporate party in order to command that person's appearance via a notice of deposition served on the corporate party's attorney.  United States v. Afram Lines Ltd., 159 F.R.D. 408, 413 (S.D.N.Y. 1994); Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 169 (S.D.N.Y. 1985).  See also 8A Wright & Miller § 2103 at p. 479.   If the person selected for deposition is not an "officer, director, or managing agent," then the party seeking discovery must

subpoena that deponent just as with any nonparty.  Afram Lines Ltd., 159 F.R.D. at 413; Sugarhill Records Ltd., 105 F.R.D. at 169.

Here, Janet Estes is no longer employed at Mid Century.  Also, significantly, Mid Century does not claim her to be an officer, director, or managing agent.  If the person to be deposed is not a party, he or she must be subpoenaed pursuant to Rule 45.  See 8A Wright & Miller § 2106 at p. 505. Janet Estes is not a party to this action, is not a current employee of Mid Century, and Mid Century does not claim that she is an officer, director or managing agent.  Therefore, in order to depose Ms. Estes, Mr. Gowan must personally serve her with a subpoena delivered to her in order to depose her. See Fed. R. Civ. P. 45(b)(1).  Service of a subpoena requires personal service; it is not sufficient to leave a copy of the subpoena at the witness' home nor can a subpoena be served by serving the witness' lawyer.  See 9A Wright & Miller § 2454 at pp. 397-98.  When a subpoena for a deposition is served, it must be accompanied by money sufficient to pay the witness for one day's attendance and allowable mileage.  See FED. R. CIV. P. 45(b)(1).  Subpoenas may be served anywhere in the United States, but a nonparty may only be compelled to attend a deposition within 100 miles of where the nonparty resides, is employed, or regularly transacts business in person.  See FED. R. CIV. P. 45(c)(1)(A).  Thus, in order to depose Ms. Estes, Mr. Gowan must know her address so that he can serve her with that subpoena and must know her location so he can set up a deposition site that is within 100 miles of where she lives or works.

The court therefore grants Mr. Gowan's motion to compel. Mid Century is ordered to disclose Janet Estes' address to Mr. Gowan within 14 days of the date of this order.

**4.     Copies of Documents Relating to Regulatory Proceedings**

Mr. Gowan requests documents from January 1, 2009 to the present relating to suspension or revocation proceedings or other like regulatory actions relative to Mid Century's wrongful failure to pay worker's compensation claims. Mid Century has produced documents relative to one such proceeding in South Dakota during the stated time frame. In its response to Mr. Gowan's instant motion, Mid Century urges the court to deny further discovery on the grounds that it is "overly broad and burdensome."

Other than mouthing the phrase "overly broad and burdensome," Mid Century does nothing to enlighten the court as to how many such regulatory actions there were during the stated time frame, the man hours required to produce those files, or anything else. The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden–that party must make a specific showing of reasons *why* the relevant discovery should not be had. Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D. Mo. 2010); Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

Mid Century does point out, correctly, that the discoverability of such files must be factually or legally similar to Mr. Gowan's case in order to justify

discovery.  However, Mr. Gowan's request is limited to a specific category of regulatory actions:  wrongful failure to pay worker's compensation claims. Thus, Mr. Gowan's request is already limited to regulatory matters that are factually and legally similar to his claim.  The court grants Mr. Gowan's request for production number 14.  Mid Century shall provide responsive documents to Mr. Gowan within 14 days of the date of this order.

### 5.    Documents Supporting Mid Century's Denial of Benefits

Mr. Gowan asks for an order compelling Mid Century to provide documents responsive to requests for production numbers 34 through 37. These requests seek from Mid Century every document or legal opinion that it relied upon to deny Mr. Gowan's request for Mid Century to pay for 100 percent of his total knee replacement surgery, both at the time Mid Century initially denied that request, and now in order to defend Mr. Gowan's bad faith claim.

Mid Century's response is two-fold.  First, it alleges the documents it relied on, in part, are contained within the claims file which has already been disclosed.  Second, it has withheld certain documents that it asserts are protected by the attorney-client privilege.  As to the withheld documents, Mid Century has provided Mr. Gowan with a privilege log.

Mr. Gowan's reply is that he does not seek to compel the privileged documents, so that is a non-issue.  As to the "claims file," Mr. Gowan asserts there are numerous documents in that file.  Mr. Gowan asserts he has a right

to know which of those many documents Mid Century believes justifies its actions, both then and now.

The court agrees. In order to prove his bad faith claim, the law requires Mr. Gowan to show Mid Century had no reasonable basis for denying his claim for insurance benefits, and Mid Century acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of benefits. <u>See</u> <u>Sawyer v. Farm Bureau Mut. Ins. Co.</u>, 2000 S.D. 144, ¶ 18, 619 N.W.2d 644, 649. "In a bad faith case, 'the insured must show an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for the denial.' " <u>Mudlin v. Hills Materials Co.</u>, 2007 S.D. 118, ¶ 6, 742 N.W.2d 49, 51 (brackets in original) (quoting <u>Phen v. Progressive N. Ins. Co.</u>, 2003 S.D. 133, ¶ 24, 672 N.W.2d 52, 59). Obviously, then, Mr. Gowan is allowed to require Mid Century to identify which documents in its claims file it relied upon at the time it denied Mr. Gowan's claim. Similarly, if Mid Century is currently defending this action on the basis that the earlier denial was justified, but on different grounds, Mr. Gowan has a right to know that as well.

The court grants Mr. Gowan's motion to compel as to requests for production numbers 34 through 37. If the documents have already been provided, Mid Century shall identify by BATES stamp or other specific identifier which documents it relied upon then and now for the denial of Mr. Gowan's

claim. Mid Century shall provide this information to Mr. Gowan within 14 days of the date of this order.

### 6. Identity of Mid Century's Information Technology Person

Mr. Gowan served Mid Century with interrogatory number 3 which seeks the identity of the person most familiar with Mid Century's electronic claims system and electronic claims database. Mid Century has told Mr. Gowan that it is "essentially paper free" in terms of how it stores its business records. Mr. Gowan asserts that the IT person he requests the identity of will have information as to what information is recorded by Mid Century, how the information is stored and organized, and what information the company uses. Specifically, Mr. Gowan explained to Mid Century in a letter that an IT witness often knows where information is and how to find it, such as an adjuster's allowance or denial rates, how much each adjuster pays out in claims, which IME physicians are favored, and how much money an IME adjuster saves the insurance company. In short, Mr. Gowan asserts that insurance companies live on information, and that he seeks to find out what information Mid Century had at its disposal, how it uses that information, and who has access to that information.

Mid Century objects to this discovery request, characterizing it as irrelevant and the deposition sure to result as "costly and unnecessary." As with earlier objections, Mid Century fails to say why a deposition of its IT person is going to be costly, what the cost will be, whether it is more or less than the cost of other depositions, and why.

The information is clearly relevant.  As businesses, including the insurance industry, move to electronic records, more and more of the heart of the business is stored in computer data bases.  Often the end user of these systems has little insight into the information available as a whole.  Often access to the whole of the information available is restricted.  If one seeks an overview of what is stored, where it is stored, how to access that information, and who may access it, an IT person is the likely best person to provide that information.  Rather than being unnecessary, it is probably the most efficient way for Mr. Gowan to obtain the obviously relevant information.  Rule 26(b)(2)(B) specifically allows a party making an objection relative to electronically stored information to make a showing in order to prevent discovery that is not reasonably accessible, thus making it an undue burden or cost to access.  See FED. R. CIV. P. 26(b)(2)(B).  Mid Century has not invoked this provision or attempted to make this showing.

The court grants Mr. Gowan's motion to compel as to interrogatory number 3.  Mid Century shall identify the IT person most familiar with its electronic claims system and electronic claims database within 14 days of the date of this order.

### 7.    Dr. Farnham's Reports

Mr. Gowan asked Mid Century to state how many IMEs Dr. Richard Farnham had performed for Mid Century from 2000 to 2012.  Mid Century identified 11 such IMEs and gave Mr. Gowan records for the fees Mid Century paid to Dr. Farnham for these IMEs.  Mr. Gowan then served Mid Century with

discovery requests for all 11 of Dr. Farnham's IME reports and all written materials Dr. Farnham provided to Mid Century in connection with those IMEs. Mr. Gowan specified that all personal identifiers of the subjects of the IMEs could be redacted from the documents. For example, Mr. Gowan stated names, addresses, dates of birth, social security numbers and anything else that could identify the subject of the IME could be redacted from the documents.

As to relevance, Mr. Gowan states the documents requested could show that Dr. Farnham always tells Mid Century what Mid Century wants to know. The documents might show Dr. Farnham uses boilerplate in his reports. Such information would tend to show Dr. Farnham is biased. Alternatively it would tend to show that Mid Century's reliance on Dr. Farnham was not reasonable.

In addition, Mr. Gowan recites the fact that a Lexis search reveals Dr. Farnham is mentioned in seven worker's compensation cases in South Dakota, every time on behalf of the defense. Another Lexis search shows that Dr. Farnham has testified in 37 South Dakota worker's compensation cases, all but one of which was for the defense. Finally, Mr. Gowan asserts the South Dakota Department of Labor rejected Dr. Farnham's testimony in 2011, noting that "he has failed to pass his board certification test for occupational medicine on three occasions and remains uncertified in the field in which he holds himself out to the public and claims 30 years' experience."

Mid Century responds to Mr. Gowan's motion by arguing that the documents are not relevant and that the 11 other IMEs would not be admissible at trial because it would require 11 "mini trials" to show

26

Dr. Farnham's opinion in each of the 11 reports was genuine and well-founded. Finally, Mid Century objects to producing such documents on the grounds that the documents contain private and confidential medical information about persons who are not parties to this lawsuit.

First, the court addresses relevancy. "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " <u>E.E.O.C. v. Woodmen of the World Life Ins. Society</u>, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978)). Mr. Gowan has met the burden of establishing relevancy. If all 11 reports were favorable to Mid Century, or if the reports contain identical passages suggesting rote reiteration not tied to the specific facts of the case, that would certainly undermine Mid Century's reasonable reliance on Dr. Farnham's report in Mr. Gowan's case as a basis for denying his claim.

Second, as to the "mini trials" issue, as already stated above, discoverable information itself need not be admissible at trial. Rather, discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence. <u>See</u> FED. R. CIV. P. 26(b)(1) advisory committee's note. Here, whether this court allows Mr. Gowan to obtain discovery of Dr. Farnham's reports does not presage whether those reports will

be admissible at trial. That is a matter for later determination by the district court who will try this case.

Finally, the court addresses Mid Century's privacy claim. Given Mr. Gowan's concessions about the personal information that may be redacted from the IME reports, the court is at a loss to see how the patients' privacy concerns will be impacted. Once all personal identifiers are redacted from the IME reports, one reading the report would have no way of knowing whether the subject of the report was a 58-year-old woman living in Miami or a 16-year-old living in Missouri. Furthermore, each such IME report produced could, at Mid Century's election, be designated "confidential" pursuant to the district court's protective order. Then even the redacted versions of the IME reports would be protected.

Mid Century relies on <u>Lind v. United States</u>, 2014 WL 2920486 (D. Ariz. 2014); and <u>Dobosenski v. CRST Van Expedited, Inc.</u>, 2012 WL 4838871 (D. Minn. 2012). In <u>Lind</u>, the court declined to order discovery of prior IME reports by defendant's expert in part because defendant showed (1) the prior reports were disclosed subject to protective orders or confidentiality clauses that were still applicable and (2) there was no showing that the waiver of the physician-patient privilege by the subjects of the IMEs encompassed subsequent litigation. <u>Lind</u>, at **1-3. Finally, the doctor in question who had authored the IME reports plaintiff sought in <u>Lind</u> was the defendant's expert in the instant litigation. <u>Id.</u> The court denied the requested discovery for the additional reason that actual prior reports of experts were not required to be disclosed

under FED. R. CIV. P. 26, only a list containing case names, case numbers, and whether the expert testified at trial or deposition.  Id.

This case is distinguishable from Lind.  First, no personal identifiers are sought.  Second, Dr. Farnham is not Mid Century's expert—arguably, the plaintiff in Lind received *more* information that Mr. Gowan is requesting here as the Lind plaintiff received case names and court file numbers of the expert's prior testimony.  Third, Mid Century has not shown that the IMEs requested were previously covered by a confidentiality provision or protective order.  Fourth, Mid Century has not shown that the subjects of the IMEs did or did not restrict the scope of the waiver of their patient-physician privilege in the earlier reports.  Finally, Mid Century has not shown that the protective order already entered in this case is insufficient to protect any privacy concerns.

The Dobosenski case is also distinguishable, but for an entirely different reason.  In that case, a motor vehicle accident, the defendant had admitted liability on the plaintiff's negligence claim.  Dobosenski, at *1.  Thus, whether defendant's expert was biased was simply not relevant to what damages were caused to plaintiff by the accident.  Id. at *3.  Also, as in Lind, the plaintiff received in discovery arguably more information than Mr. Gowan is requesting here—the court noted that defendant provided the case name, case number, name of the court, whether testimony was at deposition or trial, and whether the case was a worker's compensation case or other civil matter.  From the case name, number and court, the plaintiff could have accessed all manner of information about the prior person who was the subject of the expert's IME.

29

Mr. Gowan addresses Mid Century's argument that the Health Insurance Portability and Accountability Act (HIPAA) prohibits disclosure. HIPPAA restricts the dissemination of health information by "covered entities." <u>See</u> 45 C.F.R. § 160.103. HIPAA defines "covered entities" as "a health plan, a health care clearinghouse, and a health care provider who transmits any health information in electronic form in connection with a transaction covered by [the] subchapter." <u>Id.</u> Since neither Mid Century nor Mr. Gowan are "covered entities," Mr. Gowan argues that HIPPA does not prohibit the discovery he requests. As the Seventh Circuit has observed, "HIPPA does not create substantive rights that act as a bar on discovery. . . [it] does not create a federal physician-patient or hospital-patient privilege." <u>Northwestern Mem. Hosp. v. Ashcroft</u>, 362 F.3d 923, 925-26 (7th Cir. 2004).

Mr. Gowan also asserts that Mid Century's citation to state law, specifically SDCL §§ 19-2-13 and 58-2-40 and ARSD 20:06:45:27, is unavailing. These statutes and regulations do not provide an independent right of privacy or, if they do, there is a specific exception for federal law authorizing disclosure or legal process authorizing disclosure.

Mr. Gowan succeeded in showing the relevancy of Dr. Farnham's prior IMEs. The burden then shifted to Mid Century to demonstrate why the discovery should not be had. Mid Century's most compelling reason for disallowing the discovery is the patients' privacy concerns. However, that issue is mitigated by Mr. Gowan's concession that Mid Century may redact from the documents anything that in any way personally identifies the patient who was

30

the subject of the IME. That concession, together with the protective order that applies in this case, adequately addresses the privacy concerns. Accordingly, the court will order Mid Century to provide the requested documents within 14 days of the date of this order.

## CONCLUSION

The three motions to compel by plaintiff Stephen M. Gowan [Docket Nos. 21, 30, and 43] are fully granted. Defendant Mid Century Insurance Company shall provide the requested discovery within 14 days of the date of this order.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 11th day of September, 2015.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge